Philip J. Giles, Cal State Bar #272582
**ALLEN, JONES & GILES, PLC**
1850 N. Central Ave., Suite 1025
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: pgiles@bkfirmaz.com

Attorney for Erik Fisher

**UNITED STATES BANKRUPTCY COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>Victor Yang and Lyndsey M. Yang,<br><br>Debtors. | Chapter 7<br><br>Case No. 2:24-bk-14484-SK<br><br>Adversary No. |
| ERIK FISHER,<br><br>Plaintiff,<br><br>vs.<br><br>VICTOR YANG;<br>and LYNDSEY M. YANG, fka<br>LYNDSEY WONG,<br><br>Defendants. | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A)** |

Plaintiff Erik Fisher ("Plaintiff") hereby alleges against Defendants/Debtors Victor Yang and Lindsey M. Yang fka Lyndsey Wong (together, "Defendants") as follows:

**COMPLAINT**

1. On June 5, 2024, Defendants filed a voluntary Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California, thereby initiating bankruptcy case no. 2:24-bk-14484-SK.

2. This is an adversary proceeding, in connection with Defendants' bankruptcy case which is now pending in this Court, to determine dischargeability of debts pursuant to actions by Defendants which amount to obtaining money, services, or

extension and renewal of credit by false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A).

3. This complaint argues in favor of finding certain debts held by Defendants as nondischargeable and seeks an order determining that the Defendants are collectively excepted from discharge for these debts.

**PARTIES, JURISDICTION, AND VENUE**

4. Plaintiff is, and at all referenced times was, an individual residing in Chandler, Arizona, and he resides there with his spouse Nancy Fisher.

5. Defendants are, and at all times referenced were, individuals residing in Palos Verdes Estates, California. Defendants are husband and wife.

6. Based on information and belief, Defendant Victor Yang is, and at all times referenced was, the controlling shareholder/CEO of AW Addaday, Inc. ("Addaday").

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it concerns a determination of the dischargeability of particular debts.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**FACTS AND ALLEGATIONS**

10. Plaintiff incorporates by reference all previous allegations of this complaint as though fully set forth herein.

11. On or before September 6, 2018, Defendants sought funding for their startup business Addaday.

12. Defendants sought a personal loan from Plaintiff to assist with their businesses.

///

13. Plaintiff agreed to loan money to Defendant Victor Yang ("Victor") as set out below.

14. Throughout the course of loans granted, Victor represented that he and his businesses were solvent and able to repay any loans and that loan funds were to be used for cash infusion into the businesses to remedy cash flow problems.

**Personal Loan Agreements**

15. On September 6, 2018, Defendants signed a *Personal Loan Agreement* (the "First Personal Loan Agreement") with Plaintiff for the amount of $100,000 and a finance charge of $75,000. The principal amount of $100,000 was funded through two wires: $80,000 on September 7, 2018, and $20,000 on September 10, 2018.

16. On October 2, 2018, after needing additional funds, Defendants signed a second *Personal Loan Agreement* ("Second Personal Loan Agreement") with Plaintiff for the amount of $50,000.00 and a finance charge of $25,000.00.

17. The total principal amount due between the First and Second Personal Loan Agreements is $250,000, including the finance charges.

18. Both the First and Second Personal Loan Agreements provide in the event of default that remains uncured for more than fifteen (15) days, the Defendants will issue a "deed of ownership equivalent to" the value of the finance charge against the Defendants' residence located at 2120 Palos Veres Drive West, Palos Verdes Estates, California 90274 ("Residence").

19. Victor sent several post-dated checks to Plaintiff purporting to pay for the personal loan debt and provided verbal and written assurances to Plaintiff that sufficient funds would be available to fulfill the checks at the check's post-dated time, but Plaintiff could never cash these checks due Victor's accounts holding to insufficient funds:

a. A check dated April 1, 2019 for the amount of $14,584.

b. A check dated May 1, 2019 for the amount of $14,584.

c. A check dated June 1, 2019 for the amount of $14,584.

d. A check dated August 1, 2019 for the amount of $14,584.

e. A check dated September 1, 2019 for the amount of $14,584.

f. A check dated October 1, 2019 for the amount of $14,584.

g. A check dated November 1, 2019 for the amount of $14,584.

h. A check dated December 1, 2019 for the amount of $14,584.

i. An undated Wells Fargo check numbered 119 totaling $12,500.

j. An undated Wells Fargo check numbered 120 totaling $12,500.

k. An undated Wells Fargo check numbered 121 totaling $12,500.

l. An undated Wells Fargo check numbered 122 totaling $12,500.

20. Notwithstanding the multiple post-dated checks that could not be cashed, Victor did make certain payments to Plaintiff on debt from the personal loan agreements as follows:

a. Plaintiff deposited a check from Victor in the amount of $14,584 on April 11, 2019.

b. Plaintiff deposited another check from Victor in the amount of $14,584 April 11, 2019.

c. Plaintiff deposited another check from Victor in the amount of $14,584 on April 11, 2019.

d. Plaintiff deposited another check from Victor in the amount of $12,500 on April 11, 2019.

e. Plaintiff deposited another check from Victor in the amount of $12,500 on April 11, 2019.

f. Victor made a payment of $15,000 to Plaintiff through a Wells Fargo wire transfer on December 13, 2019.

g. Victor made a payment of $9,000 to Plaintiff through a Wells Fargo

wire transfer on December 20, 2019.

h. Victor made a payment of $5,000 to Plaintiff through a Wells Fargo wire transfer on March 2, 2020.

21. After application of the $97,752.00 paid by Defendants towards the personal loans, the remaining unpaid balance due is $152,248.

**Purchase Order Loans**

22. On or about March 4, 2020, Victor called Plaintiff and held out that his other company, Perfect Massagers, LLC ("Perfect Massagers") was growing exponentially and that he needed more money to accommodate the growth.

23. Plaintiff and Victor continued speaking monthly, and Victor expressed the need for some bigger investors and more capital to start selling product to larger retail stores such as Target, Best Buy, and Costco and to otherwise continue growing his companies.

24. Victor represented to Plaintiff that he was working on a deal with Costco.

25. Victor sent Plaintiff screenshots of alleged emails and videos of his reported meetings with corporate representatives of Costco and Target.

26. On August 31, 2022, Victor called Plaintiff and requested a personal 30-day loan for $50,000 for the stated purpose of funding his supplier in China for items to be delivered in the first quarter of 2023.

27. On the same day, Plaintiff sent by wire transfer $50,000 to Victor through his LLC, Perfect Massagers.

28. In exchange for this loan, Victor provided a check made out to Plaintiff for $60,000 to be cashed at a later date.

29. On September 6, 2022, Victor called Plaintiff requesting an additional 30-day loan of $50,000.

30. On the same day, Plaintiff sent by wire transfer $50,000 to Victor through

his LLC, Perfect Massagers.

31. In exchange for this loan, Victor provided a check made out to Plaintiff for $60,000 to be cashed at a later date.

32. On September 9, 2022, Victor called Plaintiff requesting an additional $50,000 personal loan, this time for a 15-day period.

33. On the same day, Plaintiff sent by wire transfer $50,000 to Victor through his LLC, Perfect Massagers.

34. In exchange for this loan, Victor provided a check made out to Plaintiff for $55,500 to be cashed at a later date.

35. On September 19, 2022, Victor called Plaintiff to request an additional personal loan of $50,000, this time on a 21-day loan period.

36. On the same day, Plaintiff sent by wire transfer $50,000 to Victor through his LLC, Perfect Massagers.

37. In exchange for this loan, Victor provided a check made out to Plaintiff for $57,000 to be cashed at a later date.

38. These four loans are completely unpaid to the collective principal loan amount of $200,000, not counting the additional $32,500 in finance charges which the post-dated checks accounted for.

**Loan Extension Requests**

39. On September 22, 2022, Victor called Plaintiff and requested an extension on the personal loan of $50,000 that originated on August 31, 2022.

40. Plaintiff accommodated this request and extended the loan period an additional 10 days in exchange for a late fee charge of $5,000.

41. Victor provided a check made out to Plaintiff for $5,000 to be cashed at a later date.

42. On October 31, 2022, Victor called Plaintiff and requested an extension for

all his outstanding loans to Plaintiff.

43. During the call, Victor claimed that Target would be paying him a few days prior to November 10, 2022.

44. Plaintiff accommodated Victor's request and extended the loan period to November 10, 2022 in exchange for a late fee charge of $12,500, and no check was issued in exchange in this instance.

**Final Communications**

45. On November 1, 2022, Plaintiff called Victor seeking payment on the aforementioned loans, and Victor held out that he would soon receive a payout from Target which he would use to pay Plaintiff.

46. Victor further agreed that he would satisfy the original personal loan agreements, and Victor offered a partial payment of $105,000.

47. Plaintiff understood this partial payment as an indication of Victor's intention to avoid default, repay his loans to Plaintiff, and induce Plaintiff away from exercising his default rights.

48. In interest of this agreement, Victor provided a check made out to Plaintiff in the amount of $105,000 to be cashed on a post-dated day.

49. The check was written from an account held in the name of Addaday Intelligent Technologies and dated November 4, 2022.

50. Pursuant to the records of the California Secretary of State, Addaday Intelligent Technologies's registration was suspended and the company deemed inactive as of January 4, 2022, approximately eleven months prior to the issuance of the aforementioned check.

51. On November 10, 2022, Victor informed Plaintiff that he did not receive payment from Target due to a glitch in Target's receiving system. Victor further informed Plaintiff that the checks Victor previously provided cannot be cashed because

no funds were available to fulfill the checks.

52. After more months of no payments, Plaintiff pursued the default provision in the original personal loan agreements with Victor.

53. Defendants conveyed a Deed of Trust granting Plaintiff a lien on the Defendants' Residence through a Deed of Trust, but misrepresented to Plaintiff that the Deed of Trust would be in second position behind Defendants' first mortgage.

## COUNT I—11 U.S.C. § 523(a)(2)(A)

### Debt Arising from False Pretenses, False Representation, or Actual Fraud

54. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs as if fully restated herein.

55. Defendants obtained loans from Plaintiff under false pretenses, false representation or actual fraud by inducing Plaintiff to make the loans to them and/or their companies and providing illusory assurances of payment by issuing postdated checks that could never be cashed.

56. Victor falsely represented his and his companies' ability to pay back the loans from Plaintiff.

57. Victor knew or should have known that these representations were false at the time they was made because his knowledge of his and his companies' bank accounts would inform him that the checks he issued to Plaintiff could not be cashed.

58. Victor made these representations with the intent to deceive Plaintiff into providing loans to Victor's business ventures with a false sense of security that his issued checks would repay the loans.

59. Victor also represented that he would repay the loans by telling Plaintiff about his supposed forthcoming deals with large retail stores such as Target which would enable him to pay Plaintiff.

60. Victor knew or should have known that this representation was false at the

time it was made because either no deal with Target actually occurred, or Victor knew that the funds from any deal would not be used to pay Plaintiff.

61. Victor made this representation with the intent to deceive Plaintiff into providing him added loan terms and extensions and also to settle outstanding debt with Plaintiff.

62. Victor also represented immediate need for, and ability to repay, short term purchase order loans in order to fund his supplier in China for products that would be delivered in the first quarter of 2023.

63. Victor knew or should have known this representation was false because of his knowledge on the state of his business in the present which would not permit him to repay the short-term loans to Plaintiff.

64. Victor made this representation with intent to deceive Plaintiff into providing short term loans even while Victor knew that he would not repay these loans.

65. Victor made an intentional misrepresentation to Plaintiff with respect to paying Plaintiff with a fraudulent check issued by a suspended and inactive entity, Addaday Intelligent Technologies.

66. In all of the above representations, Plaintiff justifiably relied on Victor's representations because he received checks to be cashed in exchange for the loans, he received assurance that the debts would be paid in the form of Victor's supposed forthcoming deals, and he relied on Victor telling the truth about those deals as well as his necessity to pay his supplier.

67. As a result of all the above representations, Plaintiff has been irreparably harmed by Defendants and incurred losses in the form of substantial personal debt which Defendants still owe to Plaintiff.

68. Plaintiff also incurred loss in the form of a diminished lien in Defendants' home due to Defendants encumbering the property with debt to other creditors while

consistently requesting loan extensions and projecting false ability to repay his loans to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment, an order, or any other relief that the Court deems appropriate as follows:

A. Entering judgment in favor of Plaintiff in the amount of $402,248.00, which represents the total balance due from the First and Second Personal Loan Agreements, and the unpaid purchase order loans, with post-judgment interest to accrue at the applicable federal rate;

B. Declaring the aforementioned award to be exempt from discharge under 11 U.S.C. § 523(a)(2)(A); and

D. For such other relief as the Court believes just and appropriate.

DATED: August 30, 2024.

**ALLEN, JONES & GILES, PLC**

*/s/ Philip Giles #272582*
Philip J. Giles
1850 N. Central Ave., Suite 1025
Phoenix, AZ 85004
*Attorneys for Creditor Erik Fisher*